# JOHN HATCH *et al.*

## *v.*

# WILLIAM A. JORDON.

1. FRAUDULENT CONVEYANCE — *both parties must participate in fraud.* In order to impeach a conveyance of land for fraud, both grantor and grantee must be shown to have intended to commit the fraud as against creditors of the grantor.

2. SAME — *fraud not presumed.* Fraud against creditors in a conveyance of the debtor's property cannot be presumed, but must be proved.

3. When a debtor not in debt sells his interest in land to another and receives payment in full, and after debts are contracted by the firm of which he is a member, he conveys the land to the purchaser, neither he nor his grantee having any knowledge of the indebtedness, the conveyance cannot be impeached for fraud as to the creditors.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. OLIN & PHELPS, for the appellants.

Messrs. BRECKENRIDGE & CARNSEY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, exhibited in the circuit court of Will county, by William A. Jordon, a judgment creditor of John Hatch, against appellants, John N. and Sabrina S. Hatch, to set aside a deed made by John Hatch to Sabrina S. Hatch, and to subject the land conveyed by the deed to the payment of certain judgments.

The circuit court rendered a decree setting aside the deed and subjecting the land to the lien of the judgments, to reverse which the defendants to the bill have prosecuted an appeal.

The circuit court set aside the deed, on the ground that it was fraudulent as against creditors, and the only question presented by the record is, whether the evidence upon which the

court based the decree was sufficient to establish fraud in the conveyance of the land.

It appears from the evidence that in the year 1869, John S. Hatch died intestate, leaving a widow and son, appellants, as his only heirs. His estate consisted of a homestead of twenty acres, the land now in question, a ten-acre wood-lot, and some $5,000 in bonds, notes and mortgages, and a small quantity of personal property.

The estate being free from indebtedness, no administration was had upon it.

The appellant John Hatch became of age in May, 1870; in June following he formed a copartnership with one Edward Jordon, a brother of appellee, in the hardware business. The business was conducted in the firm name of Jordon & Hatch.

In 1871, the firm became indebted to appellee, and several notes were given, signed by the firm, for the indebtedness. The first was dated April 15th, 1871, due October 15th, 1871. The last note dated July 1st, 1871, due July 20th, 1872. Judgments were rendered upon a part of these notes August the 20th, 1872, and upon the remainder in the month of December following.

Prior to the rendition of the judgments, and on the 2d day of March, 1872, John Hatch conveyed to Sabrina S. Hatch all interest he held in the homestead.

Thus far there is no dispute in regard to the facts. The complainant examined several witnesses, but no new facts were elicited from them which could impeach the fairness of the conveyance.

Appellants were both examined as witnesses, and if the decree is to be sustained, it must be done by the facts obtained from their evidence.

Sabrina S. Hatch testifies, that in the spring of 1870 she and her son agreed upon a division of the property. By the arrangement her son was to take a $500 bond, one horse and a wagon and the homestead; and she was to have the rest of the property. A few days after this division of the

estate was agreed upon, John Hatch conceived the notion of forming a partnership with Jordon.

In order to raise funds to accomplish this purpose, he then sold his interest in the homestead to the appellant Sabrina S. Hatch, for $3,000, which she paid over to him.  She remained in possession of the land, but no deed was executed by John to her until the 2d day of March, 1872.

The testimony of John Hatch in regard to the transaction agrees in substance with that of his mother.

By what process of reasoning this evidence establishes fraud in the conveyance of the land we are at a loss to understand.

At the time the contract was made between appellants, and when John Hatch received payment in full for the land, the debt upon which judgment was subsequently rendered, was not in existence, and at that time it is neither claimed nor pretended that John Hatch was indebted to any person.  When the purchase money was paid and Sabrina S. Hatch was left in the possession of the land, the sale was complete, and had a court of equity been called upon, a conveyance of the land might have been decreed.

There is another feature about this transaction that shows the conveyance was not made for the purpose of defrauding creditors.

The notes upon which appellee obtained judgment were not signed by John Hatch, but they were executed by his partner in the name of the firm.  At the time the deed was executed John Hatch testifies he had no knowledge of the existence of the notes or the debt for which they were given; he did not know the firm was indebted to appellee, except upon one note which was secured by mortgage on real estate ; that he had no knowledge of these notes until a summons was served upon him some five months after the deed was made to his mother.

This being true, and there being no evidence in the record to dispute it, upon what ground it can be insisted the deed

was executed by appellant with an intent to defraud creditors it is difficult to perceive.

At the time the deed was executed it does not appear that Sabrina S. Hatch had any knowledge or suspicion that her son was indebted in any amount whatever, on the contrary she testifies she had no knowledge that he was indebted to any person except the amount he owed her. If her evidence be true, and we fail to find any thing in the record to impeach it, she bought the land in 1870 and paid the purchase money long before any debt was in existence; that five months before any suit was commenced against John Hatch to obtain a judgment, she in good faith obtained a deed, without knowledge that he was involved. Under such circumstances fraud could not be imputed to her, even had it been established that her grantor made the deed to place the property beyond the reach of creditors.

We understand the rule to be well settled in this State that, in order to impeach a conveyance for fraud, both vendor and vendee must be shown to have intended to commit the fraud, before the deed can be avoided. *Gridley* v. *Bingham,* 51 Ill. 153; *Ewing* v. *Runkle,* 20 id. 448; *Myers* v. *Kinzie,* 26 id. 36. It is also a well settled doctrine that fraud cannot be presumed, but must be proven. Under this rule, and in view of the doctrine announced in the cases cited *supra,* we do not think the evidence before the court was sufficient to impeach the conveyance of March 2d, 1872.

The record contains some evidence in regard to other property, but it has no bearing upon the conveyance of the property involved in the decree, and hence it is not necessary to notice it here. The decree will be reversed and bill will be dismissed.

*Decree reversed.*