538    APPELLATE COURTS OF ILLINOIS.

VOL. 100.] St. Louis, Belleville & Suburban Ry. Co. v. Gray.

## St. Louis, Belleville and Suburban Ry. Co. v. Melvin L. Gray.

1. PRACTICE—*Record is Conclusive to All Parties to it.*—Where the parties to a contempt proceeding for violation of an injunction are the same parties as to the proceedings for the injunction, the record of the injunction case is conclusive to them and the decree can not be attacked in a collateral proceeding.

2. DECREES—*From Court of Competent Jurisdiction Must be Obeyed.*—The principle is of universal force that the order or judgment of a court having jurisdiction must be obeyed, no matter how clearly it may be erroneous.

3. APPELLATE COURT PRACTICE—*Findings of Fact, When Not Disturbed.*—Findings of fact by the judge who heard the evidence will not be disturbed unless clearly against the preponderance of the evidence.

4. INJUNCTIONS—*When Violated.*—Where the intent of an injunction was to limit a street railway to the carrying of passengers, and cars are put on and used exclusively for carrying goods, wares, merchandise, etc., as express matter, such cars are operated for the carriage of freight and the injunction is violated.

Contempt.—Violation of an injunction. Appeal from the Circuit Court of St. Clair County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

M. W. BORDERS, attorney for appellant.

GUSTAVUS A. KOERNER and VICTOR K. KOERNER, attorneys for appellee.

MR. PRESIDING JUSTICE WORTHINGTON delivered the opinion of the court.

This is an appeal from an order fining appellant $10 for contempt in violating an injunction of the Circuit Court of St. Clair County. The clause of the injunction, for whose violation the fine was imposed, is as follows:

" The St. Louis, Belleville & Suburban Railway Company is hereby enjoined and restrained from operating upon and over the said street in front of the above described real estate, a railroad for the carriage of freight, etc."

The proceedings leading up to the issuance of the injunc-

tion are, in substance, these: Appellant is a railroad corporation, incorporated under the general railway act of Illinois, with power to build and operate an electric railway between East St. Louis and Belleville. Appellant acquired the right to construct its road along a turnpike between Belleville and East St. Louis, from the supervisors of St. Clair county, which turnpike, under the act authorizing its creation, was under the exclusive control and supervision of the county board of supervisors of said county.

Appellee owned real estate adjoining the village of Winstanley Park, and abutting upon said turnpike. At the time the consent of the supervisors to construct the railway along the turnpike was obtained, appellee's land was not included within the limits of said village. Before the railway was constructed, his land had been annexed to said village.

No proceedings were had under the statute for securing a right of way over or in front of appellee's land as village property. He therefore filed his bill to enjoin the construction of the railway in front of his land so abutting on the turnpike. The result was an injunction containing several restraining orders, among which was the order enjoining appellant from operating a railway for carrying freight.

Appellant insists that the injunction decree is a consent decree, and that appellant, being incorporated under the general railway act, could not assent to a decree that would be binding in preventing its carrying freight, for the reason that this would be against public policy. That it was a consent decree is based upon the testimony of the judge who made the decree, to the effect that according to his recollection, if was marked "O. K." by the attorneys on both sides, and so presented to him, and was thereby approved and entered.

The record, however, shows as follows:

"This case having come on to be heard on the bill of complaint herein, the answer of the defendant thereto, and the replication of the complainant to said answer, and the proofs, oral, documentary and written, taken and filed in said cause, and having been argued by counsel for the

540    APPELLATE COURTS OF ILLINOIS.

VOL. 100.]    St. Louis, Belleville & Suburban Ry. Co. v. Gray.

respective parties, and the court being fully advised in the premises, doth find that the court has jurisdiction of the subject-matter and the parties to the cause, and that the equity in this case is with the complainant," etc.

The parties to this cause are the same parties to the cause in which the above record was entered. The record is therefore conclusive as to them. Am. & Eng. Ency., Vol. 5, p. 381, 1st Ed.; Greenleaf on Evidence, Vol. 1, Sec. 538.

The decree, then, as to such parties, is not a consent decree, but is an adjudication, and is binding upon them as parties. What might be the rights of the people as against appellant under its charter are not for our consideration, as the people are not complainants in this case. So far as the parties are concerned, this is a collateral proceeding, and the decree of the court can not be attacked in it. Nor is it a defense against a fine imposed for violating an injunction, that the court erred in issuing the injunction, if it had jurisdiction of the parties and the cause.

" The principle is of universal force that the order or judgment of a court having jurisdiction must be obeyed, no matter how clearly it may be erroneous." Tolman v. Jones, 114 Ill. 154 (citing People v. Sturtevant, 5 Selden, 263, and other cases).

" This has often been held in reference to disobedience to injunctions, as in the cases above, and the principles which govern cases of contempt for the violation of an injunction order are applicable here."

The question as to the legality of the injunction order claimed to have been violated is not, then, before this court for review. In this connection it may be said also that the only issue made by the pleadings in this case is whether or not the carrying of freight by express is a violation of the injunction. The bill of complaint charges " that beginning at a time not known to said Gray (appellee), and without the consent of said Gray, the said defendant commenced carrying freight on its railroad, and on, to wit, the sixth (6th) day of June, 1901, and each day thereafter (except Sunday) the said defendant had, in addition to its passenger business, operated said road for the carrying of freight along said turnpike and in front of the property of said

St. Louis, Belleville & Suburban Ry. Co. v. Gray.

Gray, in disregard and contempt, and in violation of the said decree for injunction."

The defendant states in its answer, "that it has never violated said decree in any particular, and has not operated a railroad for the carriage of freight upon, along or across the real estate described in the above entitled cause.

The defendant expressly denies that it has commenced to carry freight on its railroad, and that subsequent to June sixth (6th), 1901, in addition to its passenger business, has operated its said road for the carrying of freight along the St. Clair county turnpike, and in front of the said property of complainant, Melvin L. Gray.

This defendant, further answering, disclaims all intention of violating said decree in any particular whatever."

An issue of fact was thus presented, which the chancellor, after hearing evidence in open court, has found against appellant.

Findings of fact by the judge will not be disturbed unless clearly against the preponderance of the evidence. Burgett et al. v. Osborn et al., 172 Ill. 227; Berkey & Gay Furniture Co. v. Thein et al., 89 Ill. App. 207.

From an examination of the record we can not say that the findings of the chancellor were unsupported by the evidence.

The case turns upon the question as to whether running express cars, not carrying passengers, but carrying freight as express matter, is "operating a railroad for the carriage of freight." The evidence shows that eight cars daily passed over appellant's railway, devoted exclusively to carrying various articles shipped as express matter. These articles include castings to and from a foundry, weighing from four ounces to 200 pounds, barrels of coal oil, boxes, crates of cabbage, sacks of potatoes, quarters of beef, hams, smoked meats, etc. These are carried for the Morrison Express Company.

It is true that it is in evidence that higher rates are paid for such carriage than would be paid if shipped as ordinary freight. But we are unable to see how this distinguishes

freight carried by express from freight carried in any other way.

To the extent, then, that appellant operates its railway, not for passenger traffic, but exclusively for the carriage of cars loaded with such miscellaneous articles as disclosed by the evidence, it operates it for the carriage of freight. If it can so carry one car, it can carry two, three or a dozen if used for the same purpose. And if barrels, crates, meats, etc., can be so carried as express matter, why not corn, oats, wheat, live stock, and even coal, if the shippers will pay the rates?

To hold that appellant can operate its railroad to carry freight, if called express matter, is to hold that appellant can violate the restraining order of the court by juggling with words.

We think that the intent of the injunction was to limit appellant's railway to the carrying of passengers, and that when cars were put upon it and used exclusively for carrying goods, wares, merchandise, meats, castings, etc., that such cars were operated for the carriage of freight, and that in so doing the injunction was violated.

Judgment affirmed.