(No. 37958.—)

ROBERT WILLIS, Appellant, *vs.* TOM RICH *et al.*, Appellees.

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

GERRITY & JENKINS, of Sycamore, and SEARS, STREIT & DREYER, of Aurora, (EDWARD M. GERRITY and ROBERT C. JENKINS, of counsel,) for appellant.

WAYNE WILSON, of Sycamore, and WILLIAM G. BLOOD, of Keokuk, Iowa, for appellees.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff brought suit in equity in the circuit court of DeKalb County to obtain a mandatory injunction compelling defendants to restore a mutual drain line across defendants' land by removing obstructions placed by them and by restoring and resurfacing the open water course forming the drain line to the width, depth and conditions existing at the time of the last mutual improvement. The trial court sitting as chancellor, at the conclusion of the evidence, denied the prayer for mandatory injunction and dismissed the complaint for want of equity. Inasmuch as the case involves a perpetual easement of drainage in favor of plaintiff's land, a freehold is involved, and this court has jurisdiction on direct appeal. *Gough* v. *Goble,* 2 Ill.2d 577.

All of the lands involved are in Mayfield Township, DeKalb County. Plaintiff owns and, since 1936, has farmed 208 acres in the south half of section 20, lying north of the Chicago Great Western Railroad Company right of way. Immediately to the south of the railroad right of way are the lands of John and Gladys Arntzen, who are not parties to the suit, and whose lands extend south to Illinois State Highway 64 which runs along the center of sections 29 and 30. Immediately west of the Arntzen land in the north half of section 30 lie the lands of defendant Rich, who also owns the southwest quarter of section 30 which lies south of Highway 64. Defendant Benson owns the west half of the southeast quarter of section 30 which is adjoined on the north and west by the lands of defendant Rich. Defendant Pearcy is the tenant on the Rich and Benson lands. No issue was made with reference to possession and ownership of the lands. Plaintiff's third amended complaint consisted of 4 counts, counts 1 and 2 of which were dismissed at the

time the testimony was concluded, and the cause was submitted on count 3. The fourth count, on which plaintiff demanded a jury, prays money damages, and the parties agree this count is not involved here.

The complaint alleges that for more than 20 years prior to 1959 there existed by mutual license, consent and agreement for the mutual benefit of the above mentioned land owners or their predecessors in title a mutual continuous drain line over and across these lands for waters falling upon the lands, which continuous drain line followed a course from upland or dominant land to low or servient land as follows: from the Willis land southerly through a conduit under the right of way of the Chicago Great Western Railroad, thence southwesterly over the Arntzen land, thence continuing southwesterly over the land of defendant Rich in the northeast quarter of section 30 to a conduit under Illinois Highway 64, thence southwesterly and westerly across the land of Benson, thence northwesterly across the land of defendant Rich in the southwestern quarter of section 30 to a conduit under the township line road known as Clare Road, thence in a northwesterly direction across the township to the west of Mayfield Township; that until October of 1939 the drain line, except for the conduit under the railroad right of way and the roads and a few hundred feet of covered tile on the land of Arntzen, consisted entirely of a natural water course and so carried off water falling upon all of said lands to permit the various owners to crop them in a profitable manner for the mutual benefit of all the land owners or their predecessors in title; that in October 1939 with the mutual consent and agreement of all of the land owners or their predecessors in title, an improved covered drain for the mutual drain line and natural water course across the Arntzen land was constructed, which covered drain terminated in a tile 20 inches in diameter, approximately 10 feet east of the section line between sections 29 and 30, the water course flowing

through the existing open natural water course across the Rich land in the northeast quarter of section 30 then owned by the heirs of Alfred Wilkinson; that at about the same time by mutual consent and agreement, the Wilkinson heirs lowered the grade of the open natural water course across their land to the conduit under Illinois Highway 64 to provide an improved drainage outlet with a covered tile drain improvement on the Arntzen land. No further change was made in the mutual drain line until late 1959, and it is alleged that the 1939 improvements afforded better drainage to plaintiff's land and the Arntzen land and also the lands of defendant Rich in the north half of section 30 and left the same satisfactory drainage existing in the lands of defendants Rich and Benson in the south half of section 30; that in November, 1959, Rich, without plaintiff's consent and without the consent of the other parties mutually concerned in the drain line, constructed a concrete retainer wall in the mutual drain line on the section line between sections 29 and 30 a few feet west of the terminus of the 20-inch tile installed in 1939, which concrete retainer wall obstructed the flow of the mutual drain line into the open water course across the northeast quarter of section 30; that the flow of the 20-inch tile was then directed into two 15-inch covered tiles which defendant Rich laid across the northeast quarter of section 30 to the conduit under Illinois Highway 64; that defendant Benson, without plaintiff's consent, and without the consent of other parties mutually concerned, directed the flow from the highway conduit into the two 15-inch covered tiles which he had laid by agreement with defendant Rich across the Benson land in section 30 connecting with two 15-inch tiles which defendant Rich laid across his land in the south half of section 30, and terminating at the conduit under Clare Road; that the "unilateral" action of defendants Rich and Benson in constructing said retaining wall and directing the flow of the mutual drain line from its existing channel through the open

water course to the two 15-inch tile lines caused such flooding to plaintiff's land as to unlawfully and substantially damage plaintiff's cropping of said lands in the crop years of 1960, 1961 and 1962, contrary to sections 2—8 and 2—10 of the Illinois Drainage Code (Ill. Rev. Stat. 1959, chap. 42, pars. 2—8 and 2—10,) that plaintiff promptly notified defendant Rich to remove the obstructing concrete retainer wall and demanded restoration of the mutual drain line and water course above described; that despite repeated demands, defendant Rich refused to remove said obstruction and restore the existing mutual drain line; that in 1961, due to the refusal and failure of the defendant Rich to act, plaintiff with the consent of Rich and Arntzen removed the retainer wall, in part, to permit the flow of the mutual drain line to return to its open water course across section 30; that in November, 1959, and subsequently, Rich and Benson without plaintiff's consent and without the consent of the other parties mutually concerned, caused the open water course of the mutual drain line to be filled with earth and other obstructions across the entire course of said drain line over section 30 and thereafter commenced planting crops in the site of the open water course thus completely and permanently obstructing the mutual drain line to the "continuous, permanent and irreparable damage" of plaintiff, and that plaintiff has repeatedly demanded defendants restore said mutual drain line to its condition existing prior to November, 1959. Defendants by their answer denied all of the allegations of count 3 of the complaint excepting the allegation of ownership and removal by plaintiff and Arntzen of the retainer wall which they allege was done without consulting any of the defendants. They also denied all allegations as to damages and the necessity for injunctive relief.

The trial court heard testimony for a week, and the record of the trial proceedings is lengthy. The chancellor by his written opinion found that plaintiff failed to sustain

his burden of proof as to any injury to his land "greater than that which the land for many years past sustained in times of heavy rainfall", and dismissed for want of equity. We will not disturb the findings of the chancellor unless they are manifestly against the weight of the evidence. (*Gilbert* v. *Chicago Title and Trust Co.* 7 Ill.2d 496, 501.) Since the plaintiff here contends that the trial court erred both in finding facts that were not in evidence and in making conclusions of fact against the manifest weight of the evidence and in applying the law to the facts, it is necessary that we review the evidence to determine where the manifest weight lies, having regard to the issues of the case. The record discloses that each of the allegations contained in count 3 of the complaint and detailed at some length in the next preceding paragraph of this opinion were proved, excepting as to the allegations as to damage to crops, flooding of plaintiff's lands, and permanent obstruction of the mutual drain line. On these matters there was conflicting testimony. The remainder of the allegations, although denied by defendants, were not met by the defendants with any evidence adduced at the trial. As this court said in *Montgomery* v. *Downey,* 17 Ill.2d 451, 458: "It has long been settled in this State that the owner of land which by reason of its elevation is servient to, and provides natural drainage for, the surface waters of higher lands may, by prescription, obtain an easement to free his land of the natural burden. Thus, as to surface water drainage, it may be said that the dominant land has a benefit and the servient land a burden and that, by the construction of a levee or other barrier to the natural drainage, the owner of the servient land may, if such obstruction is maintained for the prescriptive period, reverse the benefit and burden situation in that the servient land becomes benefited by being kept free of surface waters, and those waters are backed up upon the dominant land, thereby burdening it. Once such an obstruction has been maintained for the prescriptive

period, it may be said to have ripened into an easement, and the owner of the servient estate then has the right to maintain and keep the levee or obstruction at its original height and may make such repairs as may be required to so maintain it." This, is seems to us, describes the situation complained of by the plaintiff in the instant case.

The Illinois Drainage Code adopted in 1955 (Ill. Rev. Stat. 1959, chap. 42, par. 1—1 *et seq.*) codified the drainage laws of Illinois and its provisions are applicable here. Section 1—2 defines "ditch" as "an artifically constructed open drain or a natural drain which has been artifically improved." A drain is defined as including "ditch" and "means any water course or conduit, whether open, covered or enclosed, natural or artificial, or partly natural and partly artificial, by which waters coming or falling upon lands are carried away." Section 2—8 provides that a ditch or covered drain constructed by mutual license, consent or agreement by owners of adjoining lands "so as to make a continuous line across the lands of such owners, or when the owner of adjoining land is permitted to connect a ditch, covered drain or levee with another already so constructed, or when the owner of lower land connects a ditch or covered drain to a ditch or covered drain constructed by the owner or owners of upper lands" shall be deemed to be a drain or levee for the mutual benefit of all lands connected to, or protected by it. This mutual license, consent or agreement need not be in writing but may be established by parol or inferred from the acquiescence of the parties. Section 2—10 provides: "Drains and levees deemed to be for the mutual benefit of the lands connected or protected shall constitute a perpetual easement on such lands and shall not be filled, obstructed, breeched or impaired in any way without the consent of the owners of all such lands."

Here undisputed evidence establishes that there was and is a ditch or drain as defined by section 1—2 of the Illinois Drainage Code, and the evidence is undisputed that the de-

fendants obstructed and filled the drain without the consent of the owners of all of the lands involved and particularly the plaintiff. Engineering testimony introduced by both plaintiff and defendants conflicted as to the adequacy of the 15-inch tile system complained of, and there is a conflict in the evidence as to whether or not the drain was impaired thereby. But section 2—10 does not require filling, obstructing, breeching *and* impairing of the drain,—none of these actions shall be taken without the consent of the owners of all the lands affected.

The overwhelming weight of the testimony establishes that the 15-inch tile system constructed by the defendants in 1959 was capable to handling but a small fraction of the 30 to 40 cubic feet per second capacity flow of the 1939 system. Even defendants' engineer corroborated the 30 to 40 cubic foot estimate made by plaintiff's engineer. We see no basis for the trial court's conclusion that it was shown by the evidence that the new drainage system afforded the same or better facilities than the old system. The weight of the evidence is quite to the contrary.

The evidence discloses that the plaintiff took what steps he could as promptly as he could following the action of the defendants in 1959. He made his objections known to the defendants and when they failed to act he brought this suit. The evidence establishes the plaintiff's easement in drainage across the defendants' lands and further establishes that the defendants obstructed the drainage without the plaintiff's consent. We believe that the grounds for the issuance of a mandatory injunction were proved, and that only such a mandatory injunction can restore plaintiff's easement as it existed prior to 1959; otherwise defendants' rights to maintain the obstruction will ripen into an easement by prescription. *Montgomery* v. *Downey*, 17 Ill.2d 451; *Kenilworth Sanitarium* v. *Village of Kenilworth*, 220 Ill. 264.

Accordingly the decree is reversed and this cause is remanded to the circuit court of DeKalb County with direc-

tions to issue a mandatory injunction against the defendants as prayed in count 3 of the third amended complaint and commanding the defendants to restore forthwith at their own expense the mutual drain line across the lands of the defendants in section 30, township 41 north, range 4 east of the third principal meridian in DeKalb County by removing therefrom all obstructions they have placed therein and by restoring and resurfacing the open water course forming said drain line to the width, depth and condition existing immediately prior to November, 1959.

*Reversed and remanded with directions.*